## Cell Tower Lease Acquisition LLC v Oceanview Manor Acquisition I, LLC

2024 NY Slip Op 34503(U)

December 23, 2024

Supreme Court, Kings County

Docket Number: Index No. 531200/21

Judge: Peter P. Sweeney

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 73 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at Civic Center, Brooklyn, New York, on the 23rd day of December, 2024.

P R E S E N T :

HON. PETER P. SWEENEY,

Justice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CELL TOWER LEASE ACQUISITION LLC,

Plaintiff,

- against -

OCEANVIEW MANOR ACQUISITION I, LLC and
OCEANVIEW MANOR HOME FOR ADULTS, INC.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

OCEANVIEW MANOR ACQUISITION I, LLC and
OCEANVIEW MANOR HOME FOR ADULTS, INC.,

Defendant and Third-Party Plaintiff,

- against -

AMERICAN TOWER CORPORATION,

Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. 531200/21

The following e-filed papers read herein:        NYSCEF Doc Nos.

| | |
|---|---|
| Notice of Motion/Order to Show Cause/ Petition/Cross Motion and Affidavits (Affirmations) Annexed | 115, 117-124    126, 128-135 |
| Opposing Affidavits (Affirmations) | 138-159 |
| Reply Affidavits (Affirmations) | 161-164 |
| Sur-Reply Affidavits (Affirmations) | 175-177 |

Upon the foregoing papers, Plaintiff Cell Tower Lease Acquisition LLC (CTLA) moves (in motion sequence [mot. seq.] six) for an order, pursuant to CPLR 3211 (a) (1) and (a) (7), dismissing the counterclaims asserted against it by defendants and third-party

[* 1]

plaintiffs Oceanview Manor Acquisition I, LLC (OMA) and Oceanview Manor Home For Adults Inc. (OMH) (collectively, the Oceanview Parties).

Third-Party Defendant American Tower Corporation (American Tower or ATC) moves (in mot. seq. seven) for an order, pursuant to CPLR 3211 (a) (1) and (a) (7), dismissing the Oceanview Parties' third-party claims asserted against it in the amended third-party complaint.

## **Background**

On December 7, 2021, CTLA, a company engaged "in the business of owning, managing, and/or leasing wireless communications sites," commenced this action against the Oceanview Parties (NYSCEF Doc No. 1 at ¶ 6). On March 6, 2023, CTLA e-filed an amended complaint alleging that:

> "[t]his action is being brought by Plaintiff for injunctive, declaratory, and other relief resulting from Defendants' unlawful refusal to allow Plaintiff unfettered access, as permitted by the [September 7, 2006] Rooftop Easement and Assignment Agreement,[1] to the wireless communications site situated on the premises located at 3010 West 33rd Street [in] Brooklyn . . . (the 'Property')" (NYSCEF Doc No. 64 at ¶ 4).

The Oceanview Parties allegedly own the Property, "a multi-story assisted living facility located near Coney Island . . ." (*id.* at ¶¶ 5 and 8). The amended complaint alleges that "[t]he rooftop wireless communication site located on the Property . . . consists of antennas and other telecommunications equipment from which [CTLA's] Customers transmit

---

[1] Defendants, the Oceanview Parties, allegedly entered into the Rooftop Easement and Assignment Agreement on or about September 7, 2006 (Easement Agreement), with CTLA's predecessor-in-interest, MAL Properties, LLC (MAL) (*id.* at ¶ 12).

2

[* 2]

signals . . . to their customers and other end users in the vicinity of the Property" (*id.* at ¶ 7). Under the Easement Agreement, the Oceanview Parties allegedly agreed to provide CTLA and its Customers with access to and from the Easements and, as a result, "Plaintiff and its Customers are contractually entitled to unfettered access to the Site twenty-four (24) hours a day, seven (7) days a week" (*id.* at ¶¶ 17 and 23). The amended complaint further alleges that:

> "Defendants have repeatedly and improperly denied access to Plaintiff and its Customers in violation of the Easement Agreement, thereby preventing Plaintiff's Customers from undertaking necessary inspections, repairs, maintenance, and/or upgrades to the telecommunications Equipment on site" (*id.* at ¶ 24).

The amended complaint alleges that CTLA's customers include leading wireless service providers such as AT&T Wireless (AT&T) and Verizon Wireless (Verizon), which service many of their own customers in the area (*id.* at ¶ 7). The amended complaint also asserts that "[o]n or about December 1, 2000, AT&T . . . and the prior owner of the Property, Manor Home for Adults, entered into a Lease Agreement (the 'AT&T Lease') in connection with AT&T's operation and maintenance of a wireless communications site on the Property" and "[t]he AT&T Lease grants AT&T, and its successors and assigns, the right to unrestricted access to the Property in order to install, modify, and operate its communications equipment . . ." (*id.* at ¶¶ 9 and 10).

The amended complaint asserts the following five causes of action: (1) an injunction enjoining Defendants from denying CTLA and its Customers unfettered access to the Site (*id.* at ¶¶ 45-50); (2) specific performance of the Easement Agreement (*id.* at ¶¶ 52-56); (3)

3

[* 3]

a judgment declaring that "Defendants (a) must allow Plaintiff and its current and future Customers, lessees, and licensees, among others, access twenty-four (24) hours a day, seven (7) days a week without notice to Defendants and for all business related purposes to/from the Property, Easements, and Communications Facility, and (b) must not interfere with the exercise of their rights under the Easement Agreement . . . including, but not limited to, the specific right to construct, maintain, repair, replace, improve, operate, upgrade, and remove telecommunication equipment and utilities within the Easements" (*id.* at ¶¶ 58-60); (4) breach of the Easement Agreement (*id.* at ¶¶ 62-65); and (5) breach of the implied covenant of good faith and fair dealing (*id.* at 67-68).

### *The Oceanview Parties' Amended Answer with Counterclaims*

On January 15, 2024, after the court denied the Oceanview Parties' pre-answer dismissal motion,[2] the Oceanview Parties e-filed their answer (NYSCEF Doc No. 103). On February 1, 2024, the Oceanview Parties e-filed an amended answer, in which they denied the allegations in the amended complaint and asserted several affirmative defenses, including "access has not been denied . . ."; "Plaintiff seeks to locate equipment and/or antennas on areas of the building which are not designated by law, contract, or otherwise, to be a part of Plaintiff's leased areas or areas covered by any easement or lease" and "[u]pon information and belief, any damages suffered by Plaintiff, its successors, agents or

---

[2] In denying the Oceanview Parties' pre-answer dismissal motion, the court held that "the easement agreement, read as a whole, did not require assignments to be signed by the defendants to be enforceable" as such right was free and unrestricted and that the Oceanview Parties "failed to demonstrate that the plaintiff is not the real party in interest or that it has an illusory interest in the easement" (NYSCEF Doc No. 101 at 2-3).

4

[* 4]

assigns was caused by the interference of American Tower . . ." (NYSCEF Doc No. 110 at ¶¶ 8, 11 and 28).

The Oceanview Parties asserted the following nine counterclaims against CTLA for: (1) breach of the AT&T Lease (*id.* at ¶ 270 [a]-[o]); (2) breach of the Easement Agreement (*id.* at ¶ 273 [a]-[n]); (3) a judgment:

> "i) [declaring that] the Lease and/or Easement has not been validly assigned to Plaintiff; ii) [declaring] that Plaintiff is not the holder of any leasehold rights or interests under the Lease or Easement; iii) [declaring that] the power of attorney and/or attorney in fact status claimed or asserted by Plaintiff, its agents, successors, lessees or assigns, under and pursuant to the Lease or Easement, is void *ab initio* and of no force or effect; iv) [declaring] that Plaintiff acted in a deceitful manner in violation of NYGBL § 130 and § 349 (h); v) [declaring] that Plaintiff is not and has never been in contractual privity with OMH; vi) [declaring] that to the extent the Lease remains an effective agreement, it has not been amended, modified, supplemented or changed; vii) [declaring] that to the extent the Easement remains an effective agreement, it has not been amended, modified, supplemented or changed; viii) [declaring] that the improvements, structures and facilities on the roof exceed the limitations, dimensions and specifications in the Lease and/or Easement; ix) [declaring] that the Lease and Easement prohibit installations, construction and/or improvements which penetrate and go through the roof, parapets and side walls of the Premises; x) [declaring] that the Approval Letter and Second Amendment to Lease Agreement are void, *ab initio*, and are of no force or effect; xi) [declaring] that the Lease did not merge with and was not amended, changed or supplemented by the Easement; xii) directing Plaintiff, its agents, successors, tenants,, lessees and assigns to remove any and all equipment for which there is no current permit and to repair or replace all damaged portions of the Premises at Plaintiff's sole cost and expense; xiii) enjoining Plaintiff, its successors, agents, tenants and assigns, from filing any applications with any agency in the name of either of the Defendants; xiv) directing Plaintiff to provide Defendants with

5

copies of all filed applications and supporting documents and communications filed with any agency in connection with Premises or their use of Premises; xv) directing Plaintiff to pay all fees, fines, and penalties and reimburse Defendants for same, including attorney's fees, which Defendants were forced to incur resulting from Plaintiff's fraudulent and deceptive actions; xvi) declaring the Lease as amended to be null and void; xvii) declar[ing] the applications filed with the NYC Dept. of Buildings and/or NYC Fire Department and resulting permits and variances are void *ab initio* and of no force or effect and any improvement, which proceeded based on the issuance of said permits or variance must be removed at the sole cost of Plaintiff, and the Premises restored to their condition as of September 6, 2000; xviii) [] directing the removal by licensed/certified and insured contractors of all stored batteries and restore the Premises from any damages; xix) . [declar[ing] [that] Plaintiff has terminated the Lease; xx) [declaring] that Plaintiff, its agents, successors, lessees, and assigns, including ATC, have no right to occupy, possess or use any part of the Premises and shall be removed from the Premises as holdovers/ trespassers, and that all equipment, personal property, batteries and installations be removed in a safe, and secure manner, by licensed and insured contractors relinquishing any and all interest in the Premises and to restore same to the condition it was on commencement of the term of the Lease, on December 1, 2000, all at the expense of Plaintiff; [and] (xx[i]) [directing] that Defendants be provided with true and correct certified digital and hard copies of all books and records maintained by Plaintiff, its agents and assigns, including ATC, relating to the Premises, at the sole cost and expense of Plaintiff" (*id.* at ¶ 298);

(4) fraudulent concealment of applications filed with New York City (NYC) agencies in breach of CTLA's fiduciary duty (*id.* at ¶¶ 300-316); (5) breach of fiduciary duty by failing to disclose that "its agents were signing applications in the name of OMA" and by failing to account for all rents and revenues (*id.* at ¶¶ 318-329); (6) deceptive business practices in violation of New York General Business Law (GBL) §§ 130 and 349 by allowing ATC

6

[* 6]

to act "as the *de facto* holder of rights and interests under the Lease and Easement" and by doing business "under the assumed name of ATC . . ." (*id.* at ¶¶ 331-346); (7) an accounting of all rents and revenues collected, pursuant to the Net Profits Agreement (*id.* at ¶¶ 348-356); (8) breach of the implied covenant of good faith and fair dealing (*id.* at ¶¶ 358-359); and (9) an injunction compelling CTLA and its agents, lessees and assigns:

> "to act in a safe and lawful manner, to cease from holding themselves out as owners, agents or attorney in fact for the owner, to cease from filing forms or applications with governmental agencies [and to] enjoin any improper and unauthorized use of the Premises, enjoin any improper installations or construction on the Premises, require the obtaining of and payment for all permits and require the removal of the batteries by licensed and insured contractors stored on the Premises . . . and require the issuance of all insurance policies required by the terms of the Lease and Easement" (*id.* at ¶ 371).

### *The Third-Party Complaint*

On or about January 15, 2024, the Oceanview Parties e-filed a third-party summons and a complaint against ATC, CTLA's parent company (NYSCEF Doc Nos. 105 and 106). Subsequently, on February 16, 2024, the Oceanview Parties e-filed a *76-page* amended third-party complaint verified by counsel (NYSCEF Doc No. 114). The amended third-party complaint alleges that the AT&T Lease only covers a "room/cabinet space of approximately 326 square feet . . ." and "did not allow or provide for any installations which would penetrate or go through the rooftop, parapet or side walls of the building" (*id.* at ¶¶ 14 and 17). The amended third-party complaint further alleges that the AT&T Lease

7

[* 7]

was purportedly amended by ATC in 2015 and "ATC held itself out in the ATC Approval Letter as acting in place of [CTLA]" (*id.* at ¶¶ 26-35).

The amended third-party complaint asserts the following 11 third-party claims against ATC, all but two of which are identical to the counterclaims asserted against CTLA: (1) breach of the AT&T Lease in its own capacity and as agent for and alter ego of CTLA (*id.* at ¶¶ 324-352); (2) breach of the Easement Agreement in its own capacity and as agent for and alter ego of CTLA (*id.* at ¶¶ 354-377); (3) fraudulent concealment of applications filed with NYC agencies and collection of rents and revenues from tenants and refusal to account to the Oceanview Parties in breach of its fiduciary duties (*id.* at ¶¶ 379-407); (4) deceptive business practices in violation of GBL §§ 130 and 349 because "ATC has held itself out as 'CTLA' and/or has allowed CTLA to hold itself out to the public as ATC" (*id.* at ¶ 416); (5) breach of fiduciary duty "by making, allowing and condoning unauthorized filings with the NYC departments . . ." (*id.* at ¶ 432); (6) a judgment:

> "i) directing ATC and [CTLA] and their tenants, successors, agents assigns and lessees, to inventory, account for and remove any and all equipment and installations for which there is no current permit and to repair all damaged portions of the Premises, ii) enjoining ATC and [CTLA], their successors, agents, tenants, lessees, and assigns, from filing any applications with any federal, state or local agency in the name of either of the Third Party Plaintiffs, iii) directing ATC and [CTLA] to provide Third Party Plaintiffs with copies of all filed applications and supporting documents and communications filed with any agency in connection with the Premises or the use of Premises by them, their agents, successors, assigns, customers, tenants or lessees; iv) directing ATC and [CTLA] to pay all fees, fines, and penalties and reimburse Third Party Plaintiffs for same, including reasonable attorney's fees of Third Party Plaintiffs; v) declaring the Lease,

8

as amended, and the Easement to be terminated and null and void and of no force or effect; vi) declaring that ATC and [CTLA] replace, at their sole cost and expense, the roof and repair or replace as necessary, all by licensed and insured contractors, all damaged areas of the parapets, side walls, hallways, structure and interior of the building; vii) declaring that ATC and [CTLA] pay all costs of Third Party Plaintiffs for engineering and environmental studies, by contractors selected by Third Party Plaintiffs, to evaluate and determine the extent of the damages to the Premises, viii) declaring that all stored items, including the batteries, be removed and any damages be remediated, by licensed and insured contractors; (ix) declaring that ATC, [CTLA] their agents, lessees, successors, tenants, and customers have no right to occupy, possess or use any part of the Premises; (x) declare the applications filed with the NYC Dept. of Buildings and/or NYC Fire Department, and the resulting permits and variances, void and of no force or effect and any improvements which proceeded based on the issuance of said permits or variance must be removed and remediated at the sole cost and expense of ATC and [CTLA] and the Premises restored to their condition as of September 6, 2000; (xi) declaring that ATC, [CTLA], their agents, customers, their lessees, tenants sub-tenants and assigns vacate the Premises; (xii) declar[ing] that Third Party Plaintiffs are entitled, at the sole cost and expense of ATC and [CTLA], to a full and complete unrestricted audit and accounting of all books and records relating to the Premises including income, expense and disbursements by accountants or others selected by Third Party Plaintiffs; and (xiii) declar[ing] that ATC and [CTLA] deliver, in recordable form, fully prepaid, declarations or terminations stating that the Lease, Easement and Verizon Lease have been terminated and any interest relinquished and terminated; (xiv) declar[ing] that [CTLA] and ATC are not an assignee under and pursuant to a written executed Assignment of Lease or Assignment of Easement, thereby rendering any claims under and pursuant to any such documents void and of no force or effect; [and] (xv) declaring that ATC is not and has never been qualified to do business in NYS and must cease and desist from doing business in NYS" (*id.* at ¶ 437).

9

(7) an accounting of the books and records reflecting all rent or revenues collected, pursuant to the Net Profits Agreement (*id.* at ¶¶ 439-445); (8) tortious interference with the Oceanview Parties' obligations under the AT&T Lease and the Easement Agreement (*id.* at ¶¶ 447-473); (9) breach of the covenant of good faith and fair dealing (*id.* at ¶¶ 474-476); (10) an injunction enjoining ATC from "filing applications in a false and fraudulent manner . . . from accessing the Premises under false pretenses, from occupying and using the Premises in an unsafe and illegal manner . . . from deceptively holding itself out as [CTLA] and/or possessing any interest in the Lease or Easement, occupying any part of the Premises except as set forth and limited by the [AT&T] Lease and/or [the] Easement [Agreement]" (*id.* at ¶ 489); and (11) indemnification (*id.* at ¶¶ 491-492).

### *CTLA's Instant Dismissal Motion*

On February 21, 2024, CTLA filed a pre-answer motion to dismiss the Oceanview Parties' counterclaims, pursuant to CPLR 3211 (a) (1) and (a) (7). CTLA submits an affidavit from Thomas Caruso (Caruso), Dispute Resolution Counsel for ATC Operations LLC, a subsidiary of ATC, CTLA's parent company (NYSCEF Doc No. 117 at ¶¶ 1-2).

Caruso attests that "ATC is in the business of leasing, managing and operating telecommunication facilities, including telecom sites with tenants who provide telecommunications services" and ATC's subsidiary, CTLA, "enter[s] into leases and easements with property owners for the purpose of constructing and maintaining tenant cell phone facilities (antennae and related equipment) on real property or on buildings, and to hold and manage these telecommunications locations" (*id.* at ¶ 3). Caruso attests that

10

[* 10]

"[t]he rooftop wireless communication site located on the Property . . . consists of antennas and other telecommunications equipment from which [CTLA's] Customer transmits signals to their customers and other end users . . ." and "[t]he Site at issue contains, among other things, antennas, radios, amplifiers, and equipment shelters, cabinets, and/or utilities (collectively, the 'Equipment') located on the Property's roof" (*id.* at ¶¶ 5-6).

Caruso alleges that on or about December 1, 2000, AT&T and the prior owner of the Property, Sea Bay Manor Home for Adults, entered into the AT&T Lease "in connection with AT&T's operation and maintenance of a wireless communications site on the Property" (*id.* at ¶ 7). Caruso asserts that "[t]he AT&T Lease grants AT&T, and its successors and assigns, the right to unrestricted access to the Property in order to install, modify, and operate its communications equipment . . ." (*id.* at ¶ 8). Caruso attests that after Defendants acquired the Property, they entered into the Easement Agreement with MAL, CTLA's predecessor-in-interest, on September 7, 2006, for consideration, pursuant to which the Oceanview Parties granted MAL an exclusive easement (*id.* at ¶¶ 9-10).

Caruso submits a copy of the Easement Agreement, Section 1 (a) (1) of which provides that:

> "(a) Site Owner grants, bargains, sells, transfers and conveys to MAL: (1) an exclusive easement in, to, under and over the rooftop portion of the Property . . . for the transmission and reception of any and all wireless communication signals and the construction, maintenance, repair, replacement, improvement, operation and removal of towers, antennas, buildings, fences, gates and related facilities (collectively, 'Facilities') and any related activities and uses including those necessary for MAL to comply with its obligations under the agreements listed on Exhibit C ('Existing Agreements')

11

[* 11]

> *together with the right in favor of MAL and its Customers (as defined herein below) to enter the Property and access the easements described below at any time, without notice to Site Owner, twenty-four (24) hours a day, seven (7) days a week, as may be required in connection with the foregoing activities and uses . . .*" (NYSCEF Doc No. 118 at § 1 [a] [1] [emphasis added]).

Section two of the Easement Agreement provides that "Site Owner transfers and assigns to MAL, as of the Effective Date, all of its right, title and interest in, to and under the Existing Agreements, including without limitation, all rents and other monies due the Site Owner . . .". Section three of the Easement Agreement provides that "MAL shall have the unrestricted right to lease, license, transfer or assign, in whole or in part, or permit the use of the Easements and/or its rights under this Agreement by any third parties . . .". Section 15 provides that "[t]he provisions of and covenants in this Agreement shall run with the land and shall bind and inure to the benefit of the Parties and their respective successors, heirs and/or assigns . . .". Section 19 provides that the Property owner "agrees to provide [Plaintiff] and its Customers access to and from the Easements and all other space in the building consistent with the grant of the Easements . . . twenty-four (24) hours a day, seven (7) days a week". The Easement Agreement states that it is for a term of 35 years from its effective date, September 7, 2006 (*id.* at § 4; NYSCEF Doc No. 117 at ¶ 12).

Caruso attests that "[p]ursuant to Section 2 of the Easement Agreement, the [Oceanview Parties] transferred and assigned to [CTLA] all their rights, title, and interest under any existing lease agreements at the Property . . . *which specifically included the*

*AT&T Lease*" (*id.* at ¶¶ 13 and 18 [emphasis added]). Caruso avers that by a September 7, 2006 assignment, the Easements were assigned from MAL to Unison Site Management, LLC (Unison), and thereafter, from Unison to CTLA, with an Assignment and Assumption of the AT&T Lease (*id.* at ¶¶ 19-20). In addition to the Easement Agreement (NYSCEF Doc No. 118), Caruso submits copies of the assignments (NYSCEF Doc Nos. 119-123) and the Net Profits Agreement (NYSCEF Doc No. 124), pursuant to which he claims that "CTLA is currently making payments" (NYSCEF Doc No. 117 at ¶ 21).

CTLA submits a memorandum of law arguing that the Oceanview Parties' counterclaims "have no merit" and "are facially defective and should be dismissed with prejudice, except for Counterclaim III for Declaratory Judgment, which should be dismissed with leave to replead it in conformity with CPLR 3001 and 3014 . . ." (NYSCEF Doc No. 116 at 1 and 4).

***ATC's Instant Dismissal Motion***

On March 7, 2024, ATC filed a pre-answer motion to dismiss the Oceanview Parties' third-party claims, all but two of which are identical to the counterclaims asserted against CTLA., as previously discussed. ATC submits a memorandum of law asserting that:

> "[t]he Amended Third Party Complaint against American Tower includes many of the same meritless claims that the Oceanview Entities asserted in their Counterclaim against CTLA. It also includes two additional claims: Tortious Interference With Contract (Eighth Claim) and Indemnity (Eleventh Claim).

13

"The Third Party Claims have no merit. They are procedurally improper and legally deficient. In the Third Party Complaint, the Oceanview Entities ramble incoherently through a series of allegations, many of which are patently false, and none of which give rise to any colorable claims against American Tower. . . ." (NYSCEF Doc No. 127 at 1-2).

ATC asserts that "[n]owhere in their Opposition do the Oceanview Entities overcome the obstacle that the claims in a third party complaint must arise from or be conditioned upon liability asserted against third party plaintiff in [the] main action" under CPLR 1007 (*id.* at 4). ATC argues that "[t]he Oceanview Entities cannot change the fact that CTLA, not American Tower, holds all right, title, and interest in the Easement Agreement and the other agreements in connection with the Site" and the third-party claims asserted against ATC are subject to dismissal because they are not proper third-party claims within the meaning of CPLR 1007 (*id.* at 4-5).

ATC asserts that the eighth third-party claim for tortious interference with contract is subject to dismissal because "a parent corporation cannot be sued for tortious interference with the contracts of its subsidiaries" (*id.* at 4). ATC argues that the eleventh third-party claim for common law indemnification should be dismissed because the Oceanview Parties "cannot pursue an indemnity claim against American Tower because they are not without fault" (*id.* at 6).

ATC also submits a supporting affidavit from Caruso, which is identical to the affidavit he submitted in support of CTLA's dismissal motion (NYSCEF Doc Nos. 128).

14

[* 14]

### *The Oceanview Parties' Opposition*

The Oceanview Parties, in opposition to both dismissal motions, submit an opposing affidavit from Lisa M. Vider (Vider), a member of OMA and a shareholder of OMH, which are "family-owned private business[es]" (NYSCEF Doc No. 138 at ¶¶ 1-2). Vider asserts that Caruso, who is admittedly employed by ATC Operations Inc. (ATCO), "is not a party, does not have personal knowledge, and has not established a foundation for his Affidavit or any of the attached exhibits" (*id.* at ¶ 16). Vider, based upon information and belief, questions the corporate relationships of Plaintiff CTLA, ATC and ATCO (*id.* at ¶¶ 18-22), and asserts that Caruso's moving affidavits should be "disregarded". In this regard, she argues:

> "I submit to the Court that the Caruso Affidavits, that have been submitted by a person who is not a party and is not appearing as counsel, have no evidentiary value, raise no questions as to the accuracy and truth of the allegations in the Amended Answer or Third-Party Complaint, and should be disregarded.

> "Without personal knowledge, Caruso has no basis to make the purported factual allegations in the Caruso Affidavits. Even if Caruso demonstrated a foundation or basis, his assertions are wrong, are clear misstatements and an incomplete scatter shot recitation of information and do not establish that the counterclaims or third party claims are not sufficiently stated or that they do not exist" (*id.* at ¶¶ 26-27).

Vider asserts that "[e]ven if there was a connection between Caruso or ATCO and the Plaintiff or Third-Party Defendant, there is no evidence that Caruso's factual assertions . . . were based on Plaintiff's or Third-Party Defendant's business records . . ." (*id.* at ¶ 29). Vider argues that the exhibits annexed to the Caruso affidavit are inadmissible (*id.* at ¶ 31).

15

[* 15]

Vider disputes that CTLA is currently making payments under the Net Profits Agreement, as attested to by Caruso (*id.* at ¶ 36). Vider avers that "CTLA has not made payments to either of the Defendants and, as alleged in the Amended Answer and Third-Party Complaint, has refused to account for or allow an audit and accounting of all rent and revenue received, despite demands[,]" yet admits that "[c]ertain payments have been made by another entity, American Towers, LLC . . ." (*id.* at ¶¶ 37-38). Vider asserts that "[t]hrough discovery and a full audit and accounting, Defendants will obtain the information to which they are entitled . . ." and that an accounting is warranted because "Plaintiff, Third-Party Defendant, and MAL have refused to allow or provide an audit of the accounts or to provide OMA with all monies which are due" (*id.* at ¶¶ 38 and 41).

Vider also disputes that "ATC, an unrelated party, had the right to amend the AT&T Lease and expand the scope of area, use and equipment on the rooftop, pursuant to the Easement Agreement" (*id.* at ¶ 48). Vider asserts that "ATC had no such right and its actions interfered with OMA's rights under the AT&T Lease" (*id.*). Notably, Vider does not address the fact that OMA assigned its rights under the AT&T Lease. Vider further asserts that discovery will disclose that CTLA is a "shell" company and that ATC "has the obligation to ensure compliance with the terms of the AT&T Lease . . ." (*id.* at ¶ 53). However, upon information and belief, Vider attests that "ATC is not a member or manager of CTLA . . ." and "ATC acts on its own account and in its own name and holds itself out as a separate company" (*id.* at ¶ 54), which contradicts the Oceanview Parties' assertion that ATC disregards the corporate form and is CTLA's alter ego.

16

*CTLA and ATC's Reply*

CTLA and ATC, in reply, submit a supplemental affidavit from Caruso confirming his personal knowledge of the Site and his authority to speak on the movants' behalf (NYSCEF Doc No. 164). Caruso attests that:

> "I am employed as Dispute Resolution Counsel, by ATC Operations LLC, a subsidiary of American Tower Corporation ('ATC'), the parent company of Plaintiff, [CTLA], in the above-captioned matter.
>
> "ATC is a Real Estate Investment Trust with numerous subsidiaries, including ATC Operations, LLC and CTLA. In my capacity as Dispute Resolution Counsel, I am very familiar with the various contracts entered into by ATC and its subsidiaries.
>
> "I am the primary person within ATC or any of its subsidiaries responsible for managing this case. . . ." (*id.* at ¶¶ 1-3).

CTLA and ATC each submit reply memoranda of law in further support of their dismissal motions, which reiterate the legal grounds for dismissal of the Oceanview Parties' counterclaims and third-party claims (NYSCEF Doc Nos. 165 and 170).

## Discussion

"A motion to dismiss made pursuant to CPLR 3211 (a) (1) will fail unless the documentary evidence that forms the basis of the defense resolves all factual issues as a matter of law, and conclusively disposes of the . . . claim" (*Shaya B. Pacific, LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 38 AD3d 34, 37 [2d Dept 2006]). "In order for evidence submitted in support of a CPLR 3211 (a) (1) motion to qualify as documentary evidence, it must be unambiguous, authentic, and undeniable" (*Feldshteyn v Brighton*

17

[* 17]

*Beach 2012, LLC*, 153 AD3d 670, 670-671 [2d Dept 2017] [internal quotations omitted]).

CPLR 3211 (a) (6) permits the court to dismiss a counterclaim that is not properly interposed. "In determining a motion to dismiss pursuant to CPLR 3211 (a) (7), the court must afford the pleading a liberal construction, accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Fox Paine & Co., LLC v Houston Cas. Co.*, 153 AD3d 673, 676 [2d Dept 2017]). A dismissal motion under CPLR 3211 (a) (7) requires determining whether the claimant has stated a cause of action, but "[i]f the court considers evidentiary material, the criterion then becomes 'whether the proponent of the pleading has a cause of action'" (*Sokol v Leader*, 74 AD3d 1180, 1181-1182 [2d Dept 2010]). Dismissal results only if the movant demonstrates conclusively that the [claimant] has no cause of action, or that "a material fact as claimed by the pleader to be one is not a fact at all" (*id.* at 1182).

**CTLA's Instant Dismissal Motion**

**(1) The First Counterclaim**

The Oceanview Parties' first counterclaim purports to assert a claim against CTLA for breach of the AT&T Lease. However, pursuant to Section 2 of the Easement Agreement, the Oceanview Parties assigned their rights, title and interests in the "Existing Agreements," including the AT&T Lease, to MAL and its successors and assigns (NYSCEF Doc No. 118 at §2; NYSCEF Doc No. 117 at ¶¶ 13 and 18; NYSCEF Doc No. 120). It is well-established that an assignment of one's rights, title and interest in a lease

18

[* 18]

agreement divests the assignor of all contractual rights thereunder, as a matter of law (*see*, *e.g.*, *Zwiebel v Guttman*, 26 AD3d 429, 431 [2d Dept 2006] [holding that "Williamsburg Leasing, which . . . assigned all of its rights under the lease agreement to Chase, lacked standing to enforce its indemnification provision"]; *see also Singer v Boychuk*, 194 AD2d 1049, 1051 [1st Dept 1993] *lv. denied* 82 NY2d 657 [1993]). Because the Oceanview Parties divested themselves of all right, title and interest in the AT&T Lease when they entered into the Easement Agreement, their counterclaim asserted against CTLA for breach of the AT&T Lease is subject to dismissal.

### *(2) The Second and Eighth Counterclaims*

The Oceanview Parties' second counterclaim purports to assert a cause of action against CTLA for breach of the Easement Agreement without identifying any provision of the Easement Agreement that CTLA breached (*see* NYSCEF Doc No. 110 at ¶¶ 273-274).

"The essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach" (*Canzona v Atanasio*, 118 AD3d 837, 838 [2d Dept 2014] [internal quotation marks omitted]). Notably, the Second Department has held that the complaint "must identify the provisions of the contract that were breached" (*id.* at 839, quoting *Barker v Time Warner Cable Inc.*, 83 AD3d 750, 751 [2d Dept 2011]; *see also Reznick v Bluegreen Resorts Mgmt., Inc.*, 154 AD3d 891, 893 [2d Dept 2017] [holding that "(i)n order to state a cause of action to recover damages for a breach of contract, the plaintiff's allegations must identify the provisions of

19

the contract that were breached"]). While the Oceanview Parties' second counterclaim generally complains about CTLA's operations at the Site, it does not identify any specific provision(s) of the Easement Agreement that was breached, requiring dismissal of the second counterclaim.

The eighth counterclaim for breach of the implied covenant of good faith and fair dealing merely alleges, in the most conclusory way, that:

> "Plaintiff unlawfully and in bad faith destroyed OMA's economic expectations under the Lease, Easement, and Net Profits Agreement by, *inter alia*, willfully breaching the terms of such agreements, damaging OMA's property, violating laws, statutes, and regulations, failing to account for all net proceeds, failing to obtain necessary permits, fraudulently filing OMA's name to applications, and breaching its fiduciary duty to OMA" (*id.* at ¶ 359).

The eighth counterclaim, which consists of this single conclusory allegation without any substantive factual allegations describing the alleged misconduct, is dismissed.

### (3) The Third Counterclaim

CTLA asserts that the Oceanview Parties' third counterclaim seeking a declaratory judgment "on twenty separate points is an improper use of the Declaratory Judgment process under CPLR 3001 and violates CPLR 3014's requirement that a pleading set forth a concise statement of claims" (NYSCEF Doc No. 116 at 6). The third counterclaim, which is quoted verbatim herein (*supra* at 5-6), consists of a two-page conglomeration of multiple issues set forth in a single, run-on paragraph, and thus, fails to comply with CPLR 3014, which provides, in relevant part, that:

20

[* 20]

"[e]very pleading shall consist of plain and concise statements in consecutively numbered paragraphs. *Each paragraph shall contain, as far as practicable, a single allegation.* Reference to and incorporation of allegations may subsequently be by number. Prior statements in a pleading shall be deemed repeated or adopted subsequently in the same pleading whenever express repetition or adoption is unnecessary for a clear presentation of the subsequent matters. *Separate causes of action or defenses shall be separately stated and numbered . . .*" (emphasis added)

The Oceanview Parties' third counterclaim is dismissed without prejudice and with leave to replead that counterclaim so that it complies with the mandatory pleading requirements of CPLR 3014.

### (4) The Fourth and Fifth Counterclaims

CTLA contends that the Oceanview Parties' fourth and fifth counterclaims for breach of fiduciary duty are both subject to dismissal because CTLA is not a fiduciary (NYSCEF Doc No. 116 at 6-10). The fourth counterclaim against CTLA is for fraudulent concealment of applications filed with NYC agencies in breach of CTLA's fiduciary duty. The fifth counterclaim against CTLA is for breach of its fiduciary duties owed to the Oceanview Parties by failing to disclose that it was signing applications and by failing to account for all rents and revenues.

"The elements of a cause of action to recover damages for breach of fiduciary duty are (1) *the existence of a fiduciary relationship*, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct" (*Swartz v Swartz*, 145 AD3d 818, 823 [2d Dept 2016] [internal quotation marks omitted] [emphasis added]).

21

Importantly, there is no provision in either the Easement Agreement or the Net Profits Agreement that created a fiduciary relationship between CTLA and the Oceanview Parties (*see* NYSCEF Doc Nos. 118 and 124). While Section 13 of the Easement Agreement states that "Site Owner hereby . . . appoints MAL as its true and lawful attorney-in-fact, with full power of substitution and resubstitution, to negotiate and consummate leases, licenses and/or other agreements of use with Customers . . ." (NYSCEF Doc No. 118 at § 13), that provision does not explicitly establish a fiduciary relationship. Similarly, Section six of the Easement Agreement specifically provides that CTLA has the right to "apply for and obtain any and all licenses, permits, consents or approvals [from NYC agencies] which may be required in connection with the use of the Easements . . ." (*id.* at § 6), without mentioning any fiduciary relationship. Consequently, absent an express provision creating a fiduciary relationship between the parties, the fourth and fifth counterclaims asserted against CTLA for breach of fiduciary duty are subject to dismissal.

### (5) The Sixth Counterclaim

CTLA argues that the Oceanview Parties' sixth counterclaim for violation of GBL §§ 130 and 349 is subject to dismissal because those statutes are inapplicable since CTLA is operated under its official name, and not an "assumed name" and none of the activities in which CTLA allegedly engaged "constitutes a misleading consumer-oriented act" (NYSCEF Doc No. 117 at 11).

GBL § 349 (a) prohibits as unlawful all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." "The

22

requisite elements of the cause of action are well established. A plaintiff must allege that: (1) *the defendant's conduct was consumer-oriented*; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception" (*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc.*, 37 NY3d 169, 176 [2021] [emphasis added]).

Here, the sixth counterclaim alleges that CTLA "deceitfully held itself out as American Tower[,]" "in a deceptive manner allowed the Lease to be amended by the Approval Letter dated September 30, 2015, without the knowledge, approval, or consent of either Defendant" and that CTLA "condoned and approved the filing of applications, without the knowledge, approval or consent of Defendants, with the NYC Dept. of Buildings and the NYC Fire Department . . ." (NYSCEF Doc No. 110 at ¶¶ 333, 340-341). Dismissal of the sixth counterclaim for violation of GBL § 349 is warranted because CTLA's allegedly deceptive conduct was not consumer-oriented or directed at the public.

### *(6) The Seventh Counterclaim*

CTLA argues that the seventh counterclaim for an accounting should be dismissed because the Oceanview Parties "do not allege that they requested an audit under the protocol set forth in the Net Profits Agreement" (NYSCEF Doc No. 116 at 13). However the seventh counterclaim sufficiently alleges that "[p]ursuant to the Net Profits Agreement OMA is entitled to an audit and account[ing] of all rent and revenue from the Premises"; "OMA has demanded an audit and an accounting of all rent and revenue . . ." and "CTLA has refused to allow or provide an audit or accounting of all rent or revenue from the

23

[* 23]

Premises, and account for all monies due to OMA" (*id.* at ¶¶ 350-354). These allegations state a counterclaim for an accounting under the Net Profits Agreement, especially since Vider claims that CTLA has failed to pay OMA all of the money due under the Net Profits Agreement.

### *(7) The Ninth Counterclaim*

The ninth counterclaim alleges that "CTLA, its agents, successors, assigns and lessees have demanded access to the Premises for uses not permitted or set forth in the Lease or Easement, in areas not included therein and to perform construction work not authorized or permitted" and seeks injunctive relief because "Defendants have no adequate remedy at law" (NYSCEF Doc No. 110 at ¶¶ 361-371).

"To sufficiently plead a cause of action for a permanent injunction, a plaintiff must allege that there was a violation of a right presently occurring, or threatened and imminent, that he or she has no adequate remedy at law, that serious and irreparable harm will result absent the injunction, and that the equities are balanced in his or her favor" (*Hogue v Vill. of Dering Harbor*, 199 AD3d 900, 902-903 [2d Dept 2021], quoting *Caruso v Bumgarner*, 120 AD3d 1174, 1175 [2d Dept 2014] [internal quotation marks omitted]).

Here, the ninth counterclaim fails to allege that serious and irreparable harm will result absent injunctive relief and that the equities are balanced in the Oceanview Defendants' favor. Consequently, the ninth counterclaim for an injunction is dismissed for failure to allege the requisite elements for an injunction.

24

*ATC's Instant Dismissal Motion*

CPLR 1007, entitled "when third-party practice allowed," provides that:

> "[a]fter the service of his answer, a defendant may proceed against a person not a party *who is or may be liable to that defendant for all or part of the plaintiff's claim against that defendant*, by filing pursuant to Section three hundred four of this chapter a third-party summons and complaint with the clerk of the court in the county in which the main action is pending . . ." (emphasis added).

"[T]he third-party claim must be sufficiently related to the main action to at least raise the question of whether the third-party defendant may be liable to defendant-third-party plaintiff, for whatever reason, for the damages for which the latter may be liable to plaintiff" (*Qosina Corp. v C & N Packaging, Inc.*, 96 AD3d 1032, 1034 [2d Dept 2012], quoting *Zurich Ins. Co. v White*, 129 AD2d 388, 390 [3d Dept 1987] [internal quotations marks omitted]). "In other words, [t]he liability to be imposed upon a third-party defendant in a third-party action commenced pursuant to CPLR 1007 should arise from or be conditioned upon the liability asserted against the third-party plaintiff in the main action" (*Qosina Corp. v C & N Packaging, Inc.*, 96 AD3d at 1035 [internal quotation marks omitted]). The Second Department has held that "[u]nder CPLR 1007 third-party complaints are limited to a situation where a person not a party is or may be liable to defendant for all or part of the plaintiff's claim against him" and "[t]he liability must be one rooted in indemnity or contribution" (*Galasso, Langione & Botter, LLP v Liotti*, 81 AD3d 880, 883 [2d Dept 2011]).

25

[* 25]

Here, the third-party complaint was not permitted by CPLR 1007 since it fails to state a cause of action arising from or conditioned upon the liability asserted against the Oceanview Parties by CTLA in the main action. CTLA's claims in the main action arise out of the Oceanview Parties' alleged prevention of CTLA and its Customers from accessing the Site at the Property, as explicitly permitted under the Easement Agreement. The third-party complaint, which asserts claims that are entirely unrelated to the claims asserted by CTLA in the main action, is dismissed.

Furthermore, the eighth third-party claim for tortious interferences with contract is subject to dismissal, as a matter of law, because a parent company has a legal right to interfere with the contracts of its subsidiaries to protect its economic interests (*see Koret, Inc. v Christian Dior, S.A.*, 161 AD2d 156, 157 [1st Dept 1990] [holding that "Dior-Paris, as the corporate parent, had a right to interfere with the contract of its subsidiary in order to protect its economic interests"], citing *Felsen v Sol Café Mfg. Co.*, 24 NY2d 682, 687 [1969]).

The eleventh third-party claim asserted against ATC for indemnification is also dismissed, as a matter of law, because the main action alleges that the Oceanview Parties prevented CTLA and its Customers from accessing the Property in breach of the Easement Agreement. As the Second Department has held:

> "[s]ince the predicate of common-law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine" (*Konsky v Escada Hair Salon, Inc.*,

26

113 AD3d 656, 658 [2d Dept 2014] [internal quotation marks omitted]).

Because the Oceanview Parties are accused of active wrongdoing in the main action, they cannot obtain indemnification from ATC, as a matter of law. Accordingly, it is hereby

**ORDERED** that CTLA's dismissal motion (mot. seq. six) is only granted to the extent that the first, second, fourth, fifth, sixth, eighth and ninth counterclaims are dismissed, and the third counterclaim for a declaratory judgment is dismissed without prejudice and with leave to replead so that it complies with the pleading requirements in CPLR 3001 and 3014 within 15 days after service of this decision and order with notice of entry thereof; the dismissal motion is otherwise denied; and it is further

**ORDERED** that ATC's dismissal motion (mot. seq. seven) is granted and the amended third-party complaint is hereby dismissed in its entirety.

This constitutes the decision and order of the court.

E N T E R,

_____

J. S. C.

Hon. Peter P. Sweeney
Justice of the Supreme Court

27